UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CHRISTOPHER AUSTIN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | 2:18-cv-00285-GZS |
| v. | ) | |
| | ) | |
| RICKER HAMILTON, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION AFTER REVIEW**
**PURSUANT TO 28 U.S.C. § 1915(e)**

In this action, Plaintiff Christopher Austin alleges Defendants,[1] evidently in connection with child support-related proceedings in state court, have unlawfully garnished his wages and "frozen" his driver's license and bank account, without due process. (Complaint, ECF No. 1.) He also asserts the governing law is biased against non-custodial parents. (*Id.*)

Plaintiff filed an application to proceed in forma pauperis (ECF No. 5), which application the Court granted (ECF No. 6). In accordance with the in forma pauperis statute, a preliminary review of Plaintiff's complaint is appropriate. 28 U.S.C. § 1915(e)(2).

Following a review of the complaint and the attachments to the complaint, I recommend the Court dismiss Plaintiff's complaint.

---

[1] Plaintiff has joined as Defendants the following: Ricker Hamilton, Commissioner, Maine Department of Health and Human Services, York County, Mark Cronin (support enforcement), Scott Steitz (support enforcement), Nicole McLeod (support enforcement), and Ryan Fosyther (support enforcement).

**STANDARD OF REVIEW**

The federal in forma pauperis statute, 28 U.S.C. § 1915, is designed to ensure meaningful access to the federal courts for those persons unable to pay the costs of bringing an action. When a party is proceeding in forma pauperis, however, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915] are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), this is "not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim, *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980). To allege a civil action in federal court, it is not enough for a plaintiff merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner by which the

defendant subjected the plaintiff to a harm for which the law affords a remedy. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**FACTUAL BACKGROUND** [2]

Plaintiff challenges income withholding, license suspension, credit bureau reporting and other child support enforcement actions undertaken by the Maine Division of Support Enforcement and Recovery, a subdivision of the Department of Health and Human Services. (See ECF No. 2-9, p.6.) Plaintiff asserts, in conclusory fashion, that Defendants have violated his rights to due process and equal protection. Plaintiff attached to his complaint numerous documents, many of which are copies of statutes, regulations, and court decisions.[3] In one of the attachments, Plaintiff includes a "statement of claim," in which he challenges the process by which he was assessed a child support debt, and appears to assert the administrative agency is racially biased. (ECF No. 3-7.) In another statement, Plaintiff details some of his interaction with certain representatives of the Maine Department of Health and Human Services who were involved in the efforts to collect child support from Plaintiff. (ECF No. 3-10.)

---

[2] The facts set forth herein are derived from Plaintiff's complaint and certain documents attached to the complaint that contain factual representations.

[3] The documents include a Notice of Intent to Withhold Income, based on unpaid child support, directed to Plaintiff; a Federal Income Withholding Order, directed to Plaintiff's employers; a letter to Plaintiff warning of possible sanctions including the loss of his driver's license; and a Certification to Revoke License, directed to the Bureau of Motor Vehicles. (ECF No. 3-3.)

DISCUSSION

## A. Plaintiff's claim under 42 U.S.C. § 1983

Plaintiff cites 42 U.S.C. § 1983 as a basis for this Court's jurisdiction. Pursuant to the federal civil rights statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

42 U.S.C. § 1983.

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To maintain a claim under section 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999).

As alleged, Defendants' conduct was under color of state law. The issue is whether Plaintiff has alleged sufficient facts to assert an actionable claim based on the denial of rights secured to him under the Constitution or federal law.

### 1. Title IV-D

The United States Supreme Court has described the child support provisions of Title IV-D as part of "an interlocking set of cooperative federal-state welfare programs." *Blessing v. Freestone*, 520 U.S. 329, 333 (1997). The programs include the Aid to Families

4

with Dependent Children (AFDC), found in Title IV-A of the Social Security Act, 42

U.S.C. §§ 601 – 617, and related provisions in Title IV-D that require States to "establish

a comprehensive system to establish paternity, locate absent parents, and help families

obtain support orders," in consideration for federal grants that support the AFDC program.

*Blessing*, 520 U.S. at 333 – 34 (citing 42 U.S.C. §§ 651, 654).

In *Blessing*, the Supreme Court held that a group of plaintiff mothers could not

pursue relief against the State of Arizona under 42 U.S.C. § 1983 to the extent they claimed

that Title IV-D conferred upon them "an enforceable individual right to have the State's

program achieve 'substantial compliance' with the requirements of Title IV-D." *Id.* at 333.

The Court remanded the case for the District Court to consider whether the plaintiffs'

claims constitute the assertion of a violation of a federal *right* rather than the violation of

federal *law*, which assessment would require consideration of multiple factors.[4] *Id.* at 340,

342 – 46 (emphasis in original).

---

[4] The Court described the factors as follows:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

> Even if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983. Because our inquiry focuses on congressional intent, dismissal is proper if Congress specifically foreclosed a remedy under § 1983. Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.

*Blessing*, 520 U.S. at 340 – 41 (quotation marks and citation omitted).

In this case, Plaintiff does not allege Defendants deprived him of a right conferred

on him by Congress through its enactment of Title IV-D. Instead, Plaintiff contends that

Defendants' use of the enforcement provisions developed under the Title IV-D program

resulted in the deprivation of his rights under the Due Process Clause and the Equal

Protection Clause of the Fourteenth Amendment. Such a claim is not actionable under

section 1983.

## 2. *Due process*

Plaintiff has not alleged any facts that would support a due process claim. Plaintiff

merely asserts in conclusory fashion that his due process rights have been violated.[5]

Conclusory allegations are insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

## 3. *Equal protection*

Plaintiff's equal protection allegations are also insufficient to state an actionable

claim. Plaintiff suggests that Title IV-D is unfair to noncustodial parents, but noncustodial

---

[5] "Procedural due process protects a right to a fundamentally fair proceeding." *Teng v. Mukasey*, 516 F.3d 12, 17 (1st Cir. 2008). "To establish a procedural due process violation, the plaintiff 'must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [him] of that interest without constitutionally adequate process.'" *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 13 (1st Cir. 2011) (quoting *Aponte–Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006)). Where a protected interest is at stake, the basic guarantee of procedural due process is that the individual receive notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* "No rigid taxonomy exists for evaluating the adequacy of state procedures in a given case; rather, 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "[A]n inquiring court must balance a myriad of factors, including the private and public interests involved, the risk of an erroneous deprivation inherent in the procedures employed by the state, and the likely benefit that might accrue from additional procedural protections." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "Whether the deprivation was, in fact, justified is not an element of the procedural due process inquiry." *Id.*

parents are not a suspect category, and the pursuit of child support from noncustodial

parents is rationally related to a legitimate government interest.[6]

Plaintiff also asserts a belief that "the agency target[s] black men most." To state a

claim of discrimination, Plaintiff must assert (1) facts that could support a plausible

inference that he experienced differential treatment when compared to another person

"similarly situated in all relevant respects," *Bruns v. Mayhew*, 750 F.3d 61, 65 (1st Cir.

2014) (internal quotation marks omitted), and (2) facts that suggest that the difference in

treatment "was based on an impermissible consideration, such as race," *Ayala–Sepulveda*

*v. Municipality of San German*, 671 F.3d 24, 32 (1st Cir. 2012). *See also Knowlton v.*

*Shaw*, 704 F.3d 1, 11 (1st Cir. 2013) (explaining that an equal protection claim requires

"class-based, invidiously discriminatory animus") (quoting *Griffin v. Breckenridge*, 403

U.S. 88, 102 (1971)). Plaintiff's conclusory allegations lack any facts that would satisfy

his burden.[7]

---

[6] "[A] statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns*, *Inc.*, 508 U.S. 307, 313 (1993). *See also City of Cleburne*, *Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985) ("The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational.").

[7] Plaintiff has asserted his claim against York County. While municipal entities are subject to claims under 42 U.S.C. § 1983, Plaintiff's complaint lacks any facts that would connect York County to the Title IV-D enforcement system. In addition, the State of Maine and "the agency" (the Department of Health and Human Services, Division of Support Enforcement and Recovery) are not subject to a claim brought under 42 U.S.C. § 1983 because the State of Maine and its agencies are not "persons" subject to suit under § 1983. *Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir. 2002) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)).

### 4. Trial by jury

Plaintiff appears to assert that Defendants have deprived him of a right to have his child support obligation and any enforcement proceedings determined by a jury. The Seventh Amendment governs proceedings that take place in federal courts. *Gasperini v. Ctr. for Humanities*, *Inc*., 518 U.S. 415, 418 (1996). Accordingly, if the state proceedings did not afford a jury trial in an underlying paternity or child support proceeding, that ruling did not implicate a federal right and, by extension, would not support a federal claim.[8]

### 5. Plaintiff's claim under 28 U.S.C. § 2007

Plaintiff, citing 28 U.S.C. § 2007, maintains that the suspension of his driver's license violated federal law. (ECF No. 3-7.) The statute provides that a person cannot be imprisoned, based on process issued by a federal court, in a state that has abolished imprisonment for debt. Plaintiff does not allege he was imprisoned, either as the result of state or federal process. Plaintiff thus has not alleged a violation of section 2007, even if section 2007 is construed to authorize a private cause of action.

---

[8] The Seventh Amendment provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const., Amend. 7. Furthermore, Plaintiff cannot challenge the underlying state court proceedings in this Court. This Court lacks jurisdiction to act as an appellate court to review the rulings of state courts. The only federal court with such authority is the United States Supreme Court. *Silva v. Massachusetts*, 351 Fed. App'x 450, 454 (1st Cir. 2009) ("28 U.S.C. § 1257 vests the United States Supreme Court with exclusive 'jurisdiction over appeals from final state-court judgments.'" (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam)); *see also Lance*, 546 U.S. at 460 ("The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284, (2005)).

### B. Plaintiff's Claim Regarding Debt

#### 1. *Debt collection*

The federal Fair Debt Collection Practices Act (FDCPA) authorizes a civil action for a person harmed by certain debt collection practices undertaken by a debt collector. 15 U.S.C. § 1692k. The term "debt collector," however, does not include "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties." *Id.* § 1692a(6)(C). As alleged, Defendants are officers or employees of the State of Maine and, consequently, they are not subject to liability under the FDCPA.

#### 2. *Credit reporting*

The federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b), requires that individuals who furnish reports to credit reporting agencies do not report inaccurate information and that they undertake "specific duties in the event of a dispute over furnished information." *Chiang v. Verizon New England Inc*., 595 F.3d 26, 35 (1st Cir. 2010). Persons who willfully or negligently fail to comply with the FCRA can be liable to the consumer. 15 U.S.C. §§ 1681n(a), 1681o(a), 1681p. For example, a furnisher[9] of information can be liable to a consumer if, after receiving notice from a credit reporting agency of a consumer dispute, the furnisher fails to investigate the dispute, review all relevant information provided by the reporting agency, and report the result to the reporting

---

[9] "Any person with relevant data about a consumer's financial activity may voluntarily provide it to a CRA, but '[t]he most common ... furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies.'" *Chiang*, 595 F.3d at 35 (quoting H.R. Rep. 108–263, at 24 (2003)).

agency or to all relevant reporting agencies, depending on whether the report verifies or corrects the disputed information. *Chiang v. Verizon New England Inc*., 595 F.3d 26, 35 – 36 & n.8 (1st Cir. 2010).

Plaintiff's complaint and attachments suggest that he disputed "the alleged child support debt" with one or more credit reporting agencies. (ECF Nos. 1-8, 1-9.) Plaintiff evidently objected because the amount asserted as outstanding was not an amount specified in a court order and/or did not arise pursuant to a contract. (*Id.*; ECF No. 3-7.) Plaintiff also states that the amount of the debt was reported incorrectly, and that, after he contacted Transunion and Equifax, Transunion removed the debt and Equifax, evidently, has not. (ECF Nos. 3-7, 3-10 ¶ 8.) The mere fact that a credit agency might have had inaccurate information cannot support a claim that one of the named defendants supplied the inaccurate information. Plaintiff has not alleged any facts that would support a claim that any of the named defendants provided inaccurate information to a credit reporting agency, or that they failed to review and report in response to notice of a dispute received from a reporting agency. Plaintiff thus has not asserted an actionable claim under the FCRA.

### C. Plaintiff's Claim Based on Criminal Statutes

In support of his claim, Plaintiffs cites 18 U.S.C. §§ 241 and 242. The statutes, which are part of the federal criminal code, prohibit conspiracies that deprive persons of their civil rights and authorize criminal prosecution of those who engage in such conduct. Plaintiff does not have standing to pursue criminal charges against Defendants. *United States v. Nixon*, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"); *Linda R.S. v. Richard D*.,

10

410 U.S. 614, 619 (1973) (private citizens lack a judicially cognizable interest in the criminal prosecution of another); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Briand v. Lavigne*, 223 F. Supp. 2d 241, 251 (D. Me. 2002).

## CONCLUSION

Based on the foregoing analysis, after a review pursuant to 28 U.S.C. § 1915(e)(2), I recommend the Court dismiss Plaintiff's complaint.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 13th day of September, 2018.